IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SAMAD MADIR HARVEY,**
    **Petitioner-Defendant,**

v.                                               **Civil Action No. 1:14-cv-107**
                                                 **Criminal Action No. 1:13-cr-5**
                                                 **(Judge Keeley)**

**UNITED STATES OF AMERICA,**
    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION/OPINION

### I. INTRODUCTION

On June 20, 2014, Samad Madir Harvey ("Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil Action No. 1:14-cv-107, Docket No. 1; Criminal Action No. 1:13-cr-5, Docket No. 68.) On August 4, 2014, the undersigned entered an Order directing the Government to respond to Petitioner's motion. (Docket No. 71.)[1] The Government filed its response, as well as a motion for leave to file out of time, on September 3, 2014. (Docket Nos. 75 and 76.) The undersigned granted the Government's motion on September 5, 2014. (Docket No. 77.) Petitioner filed an affidavit and a reply on September 25, 2014. (Docket Nos. 79 and 80.)

The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion.

---

[1] From this point forward, unless otherwise noted, all docket entries refer to filings in Criminal Action No. 1:13-cr-5.

## II. FACTS

### A. *Conviction and Sentence*

On January 8, 2013, the Grand Jury returned a one-count Indictment against Petitioner, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Petitioner appeared before the undersigned for an initial appearance and arraignment on February 13, 2013, at which time he entered a plea of "Not Guilty" to the Indictment. On April 18, 2013, following a two-day trial, a jury convicted Petitioner of Count One. (Docket No. 35.) On May 20, 2013, Petitioner's counsel, Assistant Federal Public Defender L. Richard Walker, filed a motion for a new trial (Docket No. 43); that motion was denied by United States District Judge Irene M. Keeley on July 25, 2013 (Docket No. 52). Petitioner appeared before Judge Keeley for sentencing on July 25, 2013. Judge Keeley sentenced Petitioner to seventy-seven (77) months of incarceration, with credit for time served, to be followed by three (3) years of supervised release. (Docket No. 54.)

### B. *Direct Appeal*

Petitioner, through counsel, filed a notice of appeal on August 2, 2013. (Docket No. 56.) On appeal, Petitioner only challenged the denial of his motion for a new trial. United States v. Harvey, 564 F. App'x 19 (4th Cir. 2014) (per curiam). The panel concluded that the "district court's reasoning was appropriate and contained no abuse of discretion." Id. at 19. Accordingly, the Fourth Circuit affirmed Petitioner's conviction and sentence. Id.

### C. *Federal Habeas Corpus*

#### 1. **Petitioner's Motion**

In his motion, Petitioner asserts the following claims:

1. Counsel was ineffective for failing to object to the composition of the petit jury, which was comprised entirely of white individuals;

2. Counsel was ineffective for failing to request the fingerprint analysis report and for failing to argue that the Government committed a Brady violation by not disclosing this information;

3. Counsel was ineffective for not requesting a mental competency evaluation;

4. The trial court committed error by allowing a violation of Batson v. Kentucky, 476 U.S. 79 (1986), to occur; and

5. Counsel was ineffective on appeal for failing to raise the issues described above.

(Docket No. 68-1 at 6-19.)

**2. Government's Response**

In its response, the Government asserts:

1. Grounds One, Two, and Three are procedurally defaulted; and

2. Petitioner has not met his burden of showing that counsel was ineffective in any way.

(Docket No. 76 at 6-15.)

**3. Petitioner's Reply**

In his reply, Petitioner reiterates the arguments made in his motion. (Docket No. 80.)

### III. ANALYSIS

*A. Petitioner's Claim of Trial Court Error Is Procedurally Defaulted*

As his fourth claim for relief, Petitioner asserts that the trial court erred by allowing the trial to proceed even though the petit jury was comprised entirely of white individuals, which Petitioner asserts was a violation of Batson v. Kentucky, 476 U.S. 79 (1986). Petitioner further asserts that the Court knew of this error. (Docket No. 68-1 at 15-17.)

It is well settled that the failure to raise non-constitutional issues on direct appeal results in

their being deemed waived in a § 2255 motion. Sunal v. Large, 332 U.S. 174, 178-79 (1947); United States v. Emanuel, 869 F.2d 795, 796 (4th Cir. 1989). This is so because "a final judgment commands respect" such that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

On the other hand, constitutional issues that were capable of being raised on direct appeal but were not may nevertheless be raised in a § 2255 motion *"only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'"* Bousley, 523 U.S. at 622 (internal citations omitted). To establish cause, a movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Actual prejudice is then shown by demonstrating that the error worked to a petitioner's "'actual and substantial disadvantage,'" rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). To establish actual innocence, a petitioner must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (citations omitted) (internal quotation marks omitted). Usually, a petitioner "must demonstrate actual factual innocence of the offense of conviction;" "this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Mikalajunas, 186 F.3d at 494.

As an initial matter, the Government asserts that all of Petitioner's claims are procedurally defaulted. However, claims of ineffective assistance of counsel not raised on direct appeal and raised in a collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised in a collateral attack than on direct appeal. See United States v.

4

Richardson, 195 F.3d 192, 198 (4th Cir. 1999). Accordingly, the undersigned will consider Petitioner's claims of ineffective assistance below.

As to Petitioner's claim of trial court error, it is clear from the record that he failed to raise this claim on direct appeal. The only issue raised on direct appeal was the Court's denial of Petitioner's motion for a new trial. Harvey, 564 F. App'x at 19. Although he does not explicitly say so, Petitioner appears to assert that his procedural default should be excused because of counsel's alleged ineffectiveness in raising the claim he now asserts. However, the Supreme Court has held that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Smith v. Murray, 477 U.S. 527, 535 (1986) (citation and internal quotation marks omitted). Accordingly, Petitioner has failed to demonstrate cause for his procedural default. Furthermore, Petitioner has not proven, let alone even alleged, actual innocence to excuse his procedural default. Accordingly, the undersigned finds that Petitioner's claim of trial court error regarding the alleged Batson issue must be dismissed as procedurally defaulted.

### B.  *Petitioner's Claims of Ineffective Assistance of Counsel*

####    1.  **Standard Governing Claims of Ineffective Assistance of Counsel**

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel. First, there are "personal" decisions that require consent from the defendant, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998). The second category

includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.'" Id. (quoting United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington v. Richter, 131 S. Ct. 770, 790 (2011) (citations and internal quotation marks omitted).

The right to effective assistance of counsel extends to a defendant's first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396-97 (1985). The standard for appellate counsel is the same as for trial counsel. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000). On collateral review, however, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." Bell, 236 F.3d at 164; see also Jones v. Barnes, 463 U.S. 745, 751 (1983). Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones, 463 U.S. at 752. "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the landmark of effective advocacy." Bell, 236 F.3d at 164. Although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

7

### 2. Ground One–Ineffective Assistance Regarding Alleged <u>Batson</u> Violation

As his first claim for relief, Petitioner asserts that "trial counsel was constitutionally ineffective for failing to assure that a complete cross-section of the community was represented in [his] jury pool and impaneled jury." (Docket No. 68-1 at 6.) According to Petitioner, his equal protection rights were violated by the inclusion of all white individuals on the petit jury, and that counsel was ineffective for failing to raise this issue. (<u>Id.</u> at 8.) Petitioner also claims that counsel was ineffective for failing to raise this issue on appeal. (<u>Id.</u> at 17.)

"The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." <u>Berghuis v. Smith</u>, 559 U.S. 314, 319 (2010). To establish a prima facie violation of this requirement, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

<u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979).

The United States District Court for the Northern District of West Virginia has instituted its "Plan Prescribing Method for the Composition of Jury Wheels and the Qualification and Random Selection of Grand and Petit Jurors" ("the Plan"), in compliance with 28 U.S.C. § 1863. The Plan's purpose is to guarantee that "all litigants entitled to a trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the counties comprising the divisions wherein the Court is convened." Plan, § 1.02. Under the Plan, prospective jurors are randomly chosen from a master list of individuals registered to vote in the counties within the division and

individuals who are listed as licensed drivers by the state's Division of Motor Vehicles. Plan, § 2.03.

The undersigned finds that African-Americans are a "distinctive" group within the community. See Wheeler v. United States, Nos. 3:10cv13, 3:07cr70-3, 2011 WL 2491376, at *19 (N.D. W. Va. Apr. 25, 2011). In support of his claim, Petitioner, in his affidavit, states the following:

> A review of the West Virginia voter statistics for 2013 is: Black or African Americans in Harrison and Monongalia Counties is 7.2%.

(Docket No. 79 at 1.) However, the venire for Petitioner's jury was not solely chosen from Harrison and Monongalia Counties, because the Clarksburg point of holding court, where Petitioner's trial occurred, comprises not only those two counties, but also Braxton, Calhoun, Doddridge, Gilmer, Marion, Pleasants, Preston, Ritchie, and Taylor Counties. L.R. Gen. P. 77.02. Furthermore, as noted above, prospective jurors in this district are not only selected from those individuals registered to vote, but also those individuals listed as licensed drivers in those counties.

Petitioner simply has not presented any evidence, and the undersigned has not found any contained in the record, that satisfies the second and third prongs of the Duren test. Specifically, Petitioner has neither established that African-Americans are not fairly and reasonably represented in the jury venire, nor has he established that the procedures implemented by the Plan "systematically" exclude African-Americans from the juror selection process in this district. Given this, the undersigned finds that counsel was not ineffective for failing to challenge the composition of Petitioner's petit jury under Duren. See Wheeler, 2011 WL 2491376, at *18-20 (finding same); Morgan v. United States, Nos. 5:08cv170, 5:05cr42-1, 2010 WL 3489340, at *6 (N.D. W. Va. Aug. 31, 2010) (finding same).

9

Petitioner also alleges a violation of Batson v. Kentucky, 476 U.S. 79 (1986). In Batson, the Supreme Court noted that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." Id. at 86. Specifically, the Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Id. at 89. However, Petitioner has presented no evidence, and the undersigned had not found any in the record, that the Assistant United States Attorney who prosecuted Petitioner purposefully exercised her peremptory challenges to remove all potential African-Americans from the petit jury. Given the lack of evidence, the undersigned cannot agree with Petitioner that counsel was ineffective for failing to raise a Batson challenge.

As noted above, Petitioner also claims that counsel was ineffective for failing to raise these issues on appeal to the Fourth Circuit. Given that counsel was not ineffective for failing to raise these issues at trial, it must follow that Petitioner's claims of ineffective assistance of appellate counsel must fail as well. It is apparent that counsel "winnow[ed] out weaker arguments on appeal and focus[ed] on those more likely to prevail." Bell, 236 F.3d at 164. This is not a situation where the alleged ignored issues were clearly stronger than those presented for appellate review, sufficient to overcome the presumption of effective assistance of appellate counsel.

### 3. Ground Two–Ineffective Assistance Regarding Fingerprint Analysis

As his second claim for relief, Petitioner asserts that "trial counsel was also ineffective for failing to request the fingerprinting analysis report." (Docket No. 68-1 at 11.) He also argues that counsel was ineffective for failing to raise a Brady violation for the Government's failure to disclose

10

this information. (Id. at 12-13.) Petitioner further alleges that counsel was ineffective for failing to raise these arguments on direct appeal. (Id. at 17-19.) In his reply, Petitioner asserts that after further review of the trial transcripts, he is not pursuing his claims regarding the fingerprint analysis. (Docket No. 80 at 3.) Accordingly, the undersigned deems them withdrawn and finds no need for analysis of those claims.[2]

### 4. Ground Three–Ineffective Assistance Regarding a Competency Evaluation

As his third claim for relief, Petitioner asserts that counsel "was fully aware prior to trial that [he] suffered from a mental illness, and should have been diagnosed prior to trial to assure that he was competent to stand trial." (Docket No. 68-1 at 13.) Specifically, Petitioner claims that counsel was ineffective for failing to request that the Court order Petitioner to undergo a mental evaluation. (Id. at 14.) He also alleges that counsel was ineffective for failing to raise these issues on direct appeal. (Id. at 17-19.)

"A defendant has a due process right not to be tried for, or plead guilty to, a criminal offense unless he is competent." Galowski v. Berge, 78 F.3d 1176, 1180 (7th Cir. 1996) (citing Medina v. California, 505 U.S. 437, 453 (1992)). A district court must determine if "[the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as factual understanding of the proceedings against him." United States v. Fair, 246 F. App'x 238, 239 (4th Cir. 2007) (citing Dusky v. United States, 362 U.S. 402, 402 (1960)). At any time after the commencement of prosecution and prior

---

[2] In any event, the record establishes that counsel was not ineffective for failing to raise these issues The fingerprint analysis was disclosed to Petitioner's counsel. The record further shows that there were no identifiable fingerprints developed in this case. (Trial Transcript at 217-21.)

11

to sentencing, a district court must hold a hearing regarding a defendant's competency "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). As to the petitioner's burden on collateral review, the Seventh Circuit has stated:

> A habeas petitioner must first present substantial facts to support allegations that he was not competent to stand trial. Substantial facts are facts sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during the trial. If the petitioner presents substantial facts and shows that the . . . court provided inadequate procedures, he has satisfied his burden.

Galowski, 78 F.3d at 1181.

Petitioner has not presented "substantial facts to support allegations that he was not competent to stand trial." Id. In his motion, he refers in passing to records from the State of New Jersey's Department of Human Resources to alleges that he "suffered from a mental illness and at times did not fully understand the differences from right and wrong." (Docket No. 68-1 at 14.) Petitioner's counsel submitted portions of those records to the Court as attachments to his sentencing memorandum. Those records showed that as a juvenile, Defendant was diagnosed with a learning disability and neurological issues from having been born addicted to controlled substances. (Docket No. 51.) However, those records never indicated that Petitioner lacked the ability to understand the differences from right and wrong.

Petitioner's claim is further belied by the Presentence Investigation Report ("PSR"). The United States Probation Officer who prepared Petitioner's PSR stated:

> Mr. Harvey reports he is mentally and emotionally stable and denies any treatment history for these types of concerns. During the presentence interview, Mr. Harvey

12

was polite and cooperative. He presented himself in a sincere manner and voiced only the normal concerns associated with his current legal situation. Notwithstanding the above, as noted in the body of this report, the available records indicate the defendant has an unspecified learning disability and was prescribed Ritalin as a youth.

(Docket No. 81 at 16.) The PSR also noted that Petitioner was "born positive for narcotic controlled substances." (Id. at 14.) Furthermore, the Probation Officer reported:

The defendant's brother noted that as a youth, the defendant was prescribed Ritalin for ADHD/ADD concerns, but that the medication only compounded his symptoms. The brother noted that even though the defendant knows right from wrong, he has always suffered from poor impulse control and tends to act before thinking things through.

(Id. at 15.)

Given the record, it is clear that Petitioner's counsel considered his mental capacity. As noted above, counsel prepared a detailed sentencing memorandum concerning Petitioner's issues and diagnoses. However, nothing from the record "generate[d] a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during the trial," Galowski, 78 F.3d at 1181, and Petitioner has not presented any evidence to suggest otherwise. Accordingly, the undersigned cannot conclude that counsel was deficient for failing to request that the Court order Petitioner to undergo a competency evaluation.

As noted above, Petitioner also claims that counsel was ineffective for failing to raise these issues on appeal to the Fourth Circuit. Given that counsel was not ineffective for failing to raise these issues at trial, it must follow that Petitioner's claims of ineffective assistance of appellate counsel must fail as well. It is apparent that counsel "winnow[ed] out weaker arguments on appeal and focus[ed] on those more likely to prevail." Bell, 236 F.3d at 164. This is not a situation where the alleged ignored issues were clearly stronger than those presented for appellate review, sufficient

13

to overcome the presumption of effective assistance of appellate counsel.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 1:14-cv-107, Docket No. 1; Criminal Action No. 1:13-cr-5, Docket No. 68) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy of this Report and Recommendation by certified mail, return receipt requested, to the *pro se* Petitioner Samad Madir Harvey.

DATED: November 21, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE